We hear the first case, 16 Casa Duse. Good morning, may it please the court. The district court made three material errors in this case, any of which would require reversal and remand. First of all, the district court misinterpreted this court's ruling, and that ruling made two salient points. First of all, the panel said it, quote, need not determine whether Merkin and Reichman's reliance on the Copyright Office website is objectively unreasonable, nor whether other factors weigh in favor of granting fees, nor whether Reichman's conduct was akin to bad faith sufficient to sanctions. The court also said, the prior panel said, the district court may reconsider its grant of costs and fees and its imposition of sanctions if and when it calculates fees and costs with respect to the copyright claims only. So do you take by that that the previous panel of this court didn't expect the district court to wipe out the fees and costs for all but the tortious interference with contract? That is correct. The expectation was, and in fact on the initial remand he didn't do that. He reaffirmed the decision on fees and sanctions except with respect to the tortious interference claim. What about the conclusion that Merkin's claims, the prior panel, weren't frivolous, objectively unreasonable, or patently meritless? So that goes to the question, first of all, that commentary is a bit aside from the test for tortious interference, which is a subjective test. But it looked at the time that he interfered with the screening. It does not look at what the party's litigating positions were in the case. And in this case, the position was, I saw a comment on a website and I don't care if the judge says this isn't the law, I'm going to make this the law. There were counterclaims. This was a very narrow appeal. He didn't appeal the denial of the injunction on any of the factors. He didn't appeal the fact that the court ruled that there was a breach of contract by taking the footage and this is a narrow appeal that focused on certain specific issues. And to vacate all of the fees, all of the sanctions when the appellant decided the scope of the appeal is certainly not what anybody expected and not what Judge Sullivan expected. The panel, correct me if I'm wrong, the panel didn't just find that Merkin wasn't trying to harass Caza-Duce. It also based its decision in part on the Ninth Circuit's decision in Garcia v. Google, didn't it? That's correct. A couple of points about that. First of all, Kurtzsang does say you've got to look at the difference between someone's positions separate and apart from the case and what arguments were made in this case. So Garcia v. Google was not, that argument wasn't made in the case. The arguments that led to Garcia v. Google, which lasted for a short period of time, Judge Kaczynski's opinion, you know, lasted for nine months at that. The arguments that were made there were not made here. There were the opinion, we actually brought the opinion to the attention of Mr. Merkin and Reichman in the, because it came out in the middle of our briefing on appeal and we said, here's a case. They didn't mention it in their reply brief, they didn't mention it at argument, they didn't seem to know what it was at argument. They had every opportunity. What happened here is we've got a case and Judge Sullivan's frustration is clear. He does document with factual findings on the record why this is such an extreme situation where a party basically says, I don't care what the law says. I saw something on a website and I'm going to perpetuate this case. I'm going to assert six counterclaims. I'm going to run up fees. Maybe Mr. Merkin thought in April 2012, and it's heart of hearts, that you need to have sign-off from a party and contributor to a film. They never put in any legal authority whatsoever, nothing even akin to what was marshaled toward the Ninth Circuit, nothing at all, except for this website and the law of Hollywood, which we never saw, as the basis for saying that they could interfere with a film created by 33 different people. We go back to the Circuit Court opinion, the previous Circuit Court opinion. Could we possibly have a situation where there's one standard for the tortious interference with business relations and a different standard for the copyright review? Absolutely. Explain that. Tortious interference is a subjective test. It's a very high bar. It requires a determination that the party intended to solely had bad intent. Even if they had ... The prior panel's decision says that asserting a claim with a belief, however meritless, a belief that something is legally sound, does not rise to the high level of tortious interference. The question in the Copyright Act is ... How do we apply that standard, that there was not improper means? How do we affirm the copyright decision? Multiple ways. The Copyright Act, and Kurtzsang says, this is an objective test that looks at the party's litigating positions in the case. We cannot, under Kurtzsang, turn Section 505 into a subjective test. It is objective, for sure. The fees are the rule, rather than the exception in copyright cases. The courts do look at these issues objectively. What we would have, under a standard that elevates the fees test to one that requires the high mental state of tortious interference, is we would have every litigant saying, but I believed in my case. Even though I lost, I believed in my case. They wouldn't be obligated to put in any law. They wouldn't be obligated to make any theories, argue for the extension of the law. They could say, I relied on the internet, which is what happened here. They are two very different tests that have nothing to do with each other. We're also talking about a federal statute versus a New York State tort claim. You don't have to commit a tort to be responsible for fee shifting. Those two questions are completely dissimilar. In addition, we ... Are you saying that Reichman should be sanctioned under 1927 for conduct besides conduct relating to the copyright claims? Yes. And what specifically? Well, with respect to the decisions, the points that were not appealed, for example, breach of contract, the arguments were baseless. I mean, they were frivolous. The arguments with respect to fraud in the copyright office were not supported. The arguments with respect to conversion, it was like a conversion replevin claim, frivolous. So there are, with respect to the copyright claims, there are. But also, if you're going to assert ... That the district court, you're saying, abused its discretion in not awarding fees on that conduct? Well, the district court did award that, did make factual findings, reaffirmed those findings. The only thing that happened was, is that a letter came in after he ordered that the fees be awarded. He did find sufficient facts. He abused his discretion by not exercising it, in a sense. The court, this court said, you may, we're not making a decision as to whether wholesale reliance on the copyright office website is objectively unreasonable. We're not doing that. You do that. Well, he made those factual findings. He found bad faith as to every single claim. And he went ahead and initially affirmed it. It was only because of this comment about the party's mental state in 2012, as not having met the threshold. We actually didn't do discovery on this point. As not having met the threshold, that was he, somehow it all collapsed. He ignored the fact that Kurtzsang says, you've got to look at the litigating positions. And this is not, we did not have the parties that were litigating Garcia, for example. We had headstrong insistence that some commentary from a website was what it took to say that anybody can interfere with the screening of a film and continue to fight this, and ask for counterclaims, and all this stuff, on and on and on. I think Judge Sullivan did find that, but felt that, and the material we quote in our brief shows, he felt that this was, that this is exactly the type of case where sanctions are appropriate. A lawyer cannot refuse to look at the law. Thank you. You'll have two minutes for rebuttal. Thank you. Good morning, Your Honors. Maurice A. Reichman. I'd like to correct one continuous misstatement that has been made, both in the prior appeal and this one. On December 27th of 2011, Alex Merkin did consult the Copyright Office website. And based on what he saw there, he made an application to the Copyright Office. And, lo and behold, the Copyright Office granted him a copyright certificate. This whole case, from my point of view and from Mr. Merkin's point of view, was based on 17 U.S.C., Section 410C. And I made at least three motions dealing with Section 410C of the Copyright Act, which says that if you have a copyright certificate, it is prima facie evidence that you have a valid copyright. Even if it was improvidently granted? Pardon me? Even if the certificate was improvidently granted? But he did not lie or commit any fraud in getting it. The copyright certificate in this particular case was for directorship of a movie, which is what he did. He didn't say, I own the movie. He didn't say any of those things. He said, I was the director. And they granted him the copyright for directorship. Now, we insisted that on 410C, he had a valid copyright. This court clarified the law in the case of first impression, which is what this case was. So when this case was first appealed, on 791 Federal 3rd, page 262, it's considered the tortious interference with business relationships. And it specifically took the argument made by plaintiff's counsel that Merkin's and Reisman's continuous assertion of this copyright is a willful blindness to the factual and legal position. That was what they argued, and they argued all the way through. That's what Judge Sullivan imposed sanctions for against me because of that. And this court considered that and said, no. Isn't it true, though, that this court's previous opinion said that the court wasn't reaching your argument as to whether your claim was objectively reasonable for the purposes of awarding fees under Section 505? Correct. But clearly, Judge Sullivan imposed sanctions based on the willful blindness to factual and legal condition. He says that on page 21 of his original opinion on September 30, 2012. Based on the reversal of the tortious interference with business relationships. And the affirmance of everything else. Pardon me? And the affirming of everything else. Everything else. And that is the law. We now interpret it. This was, after all, a case of first impression on this particular issue. So they affirmed everything else, and they said, here's the situation. This case, Merkin's claim of copyright existence, was not frivolous, not objectively unreasonable, and not patently meritless. And neither Reichman nor Merkin were out to hurt or harm Cazaduza, the plaintiff. So what they said was, we're reversing the tortious interference claim, and we direct the district court on remand to re-examine, just re-examine its imposition of fees, costs, and sanctions. Which is exactly what Judge Sullivan did. He did re-examine. We had a discussion on October the 19th, 2015, in which Judge Sullivan explored all of the issue, what the words meant and everything, spent more than a half hour with counsel for the plaintiff, going over this, and explained how he was going to go about proceeding. They then brought their motion. And it is our position, throughout this whole matter, that Judge Sullivan properly exercised his discretion within the bounds of the decision of this court, in the first instance, and in accord with the mandate. And that is our position all the way through. In the district court's summary judgment opinion of September 30th, 2013, the court set forth what it said was a non-exhaustive catalog of colorless claims that you advanced during the litigation. Let me continue. For example, the fact that you, and this is the quote, grossly mischaracterized the media agreement. Now, those don't deal with the copyright theory that this court previously found was not objectively unreasonable, but why aren't those grounds for sanctions under Section 1927? The fact of the matter was, at all times during the lower court proceedings, I was relying on not the website, I was relying on the copyright certificate. And I was doing that because the copyright law said that was prima facie evidence of Merkin's copyright. Merkin didn't lie to get that copyright. He said, pages 700 to 703 of the initial record, which is part of this record, Merkin said I was the director. Nobody disputed that. That was conceded. And they gave him a copyright for that based on that certificate, which he had effective January 3rd of 2012, based on that certificate. That's why he made the call. And does that certificate relate to the raw film? It said, yeah, that he directed the raw film. And that's all he said to the New York Film Academy. I directed the raw film. He was operating on the assumption, and this was also the same assumption that Mr. Krakowski said, that they needed a chain of title. His whole philosophy, what he was taught in film school and all the things that he did, that when you make a film, you must have a chain of title. That's in Mr. Krakowski's initial declaration, that the film festivals wanted a chain of title. The chain of title meant that everybody who has the possibility of a copyright has signed over, either as a work-for-hire or otherwise, their copyright. Now, again, I would also like to point out, when this case was less than one month old, about three weeks old, Alex Merkin offered to settle the case. All he wanted, he had never been paid anything on this thing, so he said, just give me the $1,500 that you didn't pay me, I'll give you the copyright, and we'll each go our separate way. They said, no, we want $62,000 for a film that cost, according to them, $45,000. So the fact of the matter is they prevented us from settling the case. We wanted to settle three weeks after the case started because he was in Florida directing two feature-length films. He didn't have time really to litigate, and he said, look, I'll give them everything, it doesn't matter. This is only a short film. So we offered, we'll give you the copyright. Were you his attorney at the time he applied for the copyright registration? Pardon me? Were you his attorney at the time he applied for the copyright? No, he applied by himself. I had nothing to do with that. When you saw it, you thought it was the right one? I thought it's real. It says, pages 700. I called the copyright office, and they told me he had a copyright. They not only told me he had a copyright, they told me it was for directorship. I had nothing to do with that. I'm sort of like his godfather. He couldn't get himself a lawyer while he was down in Florida, so he had to settle with me. So the fact of the matter is I looked at the law. I saw 17 U.S.C. section 410C, and it says what he has, oh, my goodness, is prima facie evidence of a valid copyright. They never, ever were able to rebut that, and that's really what happened in this case. Thank you. Thank you, Your Honors. There are a few points I'd like to address. There's a lot of things in here that are untrue, that were presented in Mr. Reichman's argument. First of all, the copyright application claimed all other elements. It claimed it's his authorship direction, and it claimed all other elements of the film except for the script and the screenplay. It was right there. Just directing? Correct. That that was what was claimed was everything except for the script and the screenplay. And notably, they didn't appeal that decision. First of all, the court, the media agreement prohibited him from even filing in the first place. He did not disclose to the Copyright Office that he was restricted from doing that. They also did not appeal the decision that he did commit fraud on the Copyright Office because what is claimed is everything. He led the Copyright Office to believe that. Second, having a copyright registration does not mean that you can interfere with the exploitation of a film. We have explained this to Mr. Reichman. I know he is not a copyright specialist, and I've been writing letters since 2012 to explain that injunctive relief is not going to be granted based on one person's claim of copyright ownership. First of all, this is not a deciding factor, but secondly, it won't happen in the context of the four factors of the injunctive relief. Judge Sullivan made findings on those factors, and they were not appealed. Secondly, to say that the argument has been about Section 410C, which purportedly gives presumption of validity, if you only need to look, the court only needs to look at the en banc petition that was filed, in which Mr. Reichman criticized the panel for not stating why his, quote, complete reliance on the Copyright Office website was objectively unreasonable. So he believed that the panel did not find anything on that point, and in fact was upset that the panel did not weigh in to state why his complete reliance on the website was unreasonable. This concept of chain of title obviously is relying on this law of Hollywood point. We did explain, and Judge Sullivan did a very valiant effort in trying to explain that contracts in Hollywood have nothing to do with what the law says. This is how we got to this point. There was nothing left. This is not a case of first impression. One issue of first impression. As the court recognized, there were a lot of other issues in the case. This is a very limited appeal. Last point, I do want to address this concept, even though settlement discussions are inappropriate. What we got in response to our motion for a TRO and preliminary injunction was a motion to dismiss, counterclaims, six counterclaims, a threat to take this all the way to the Supreme Court. Judge Sullivan found that the case was being litigated on principle. There was never an offer to settle for a walkaway, not three weeks, not at any other point in time. We didn't run up $60,000 in fees in three weeks anyway. This just can't be true. There was a list of our injuries that were put forth. When we came to settlement discussions in front of Magistrate Judge Pittman, we said, these are our injuries. We included our calculation fees to date up to that point, and that was many, many, many weeks after the case was filed. So I think this is telling, but it's also untrue. I don't think it moves the needle. I think that Judge Sullivan, he did consider those arguments. He rejected those as a basis. Thank you. Thank you both for your arguments. The court will reserve decision.